IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 15-CV-23419 |
| | ) |
| SUNSET NATURAL PRODUCTS, INC., | ) |
| a corporation, and | ) |
| TERESA MARTINEZ (a.k.a. TERESA | ) |
| MARTINEZ-ARROYO) and ELSY CRUZ, | ) |
| individuals, | ) |
| | ) |
| Defendants. | ) |

## CONSENT DECREE OF PERMANENT INJUNCTION

Plaintiff, the United States of America, by its undersigned counsel, having filed a Complaint for Permanent Injunction against Sunset Natural Products, Inc., a corporation, and Teresa Martinez (aka Teresa Martinez-Arroyo) and Elsy Cruz, individuals (collectively, "Defendants"), and Defendants without admitting or denying the allegations of the Complaint, having appeared and consented to entry of this Decree without contest and before any testimony has been taken, and the United States of America, having consented to this Decree;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1. This Court has jurisdiction over the subject matter and all parties to this action.

2. The Complaint states a cause of action against Defendants under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* (the "Act").

3. The Complaint alleges that Defendants violated the Act, 21 U.S.C. § 331(a), by introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce articles of food (dietary supplements), as defined by 21 U.S.C. § 321(ff), that are adulterated within the meaning of 21 U.S.C. § 342(g)(1) in that they

1

have been prepared, packed, or held in violation of current good manufacturing practice regulations for dietary supplements ("Dietary Supplement cGMP"), as set forth in 21 C.F.R. Part 111.

4. The Complaint alleges that Defendants violate the Act, 21 U.S.C. § 331(k), by causing the adulteration, within the meaning of 21 U.S.C. § 342(g)(1), of articles of food (dietary supplements), while such articles are held for sale after shipment of one or more of their components in interstate commerce.

5. Upon entry of this Decree, Defendants and each and all of their directors, officers, agents, representatives, employees, attorneys, successors and assigns, and any and all persons or entities in active concert or participation with any of them who have received actual notice of this Decree by personal service or otherwise, are permanently restrained and enjoined under 21 U.S.C. § 332(a), and the equitable authority of this Court, from directly or indirectly manufacturing, preparing, processing, packing, labeling, holding, and/or distributing any dietary supplements at or from 7345 SW 45th Street, Miami, Florida, or at or from any other location(s) at which Defendants now, or in the future, directly or indirectly manufacture, prepare, process, pack, label, hold and/or distribute dietary supplements (the "facility"), unless and until:

A. Defendants' methods, facilities, processes, and controls used to manufacture, prepare, process, pack, label, hold, and distribute dietary supplements are established, operated, and administered in compliance with this Decree, the Act, and its implementing regulations;

B. Defendants retain, at their expense, an independent person or persons (the "Expert"), who is without any personal or financial ties (other than the retention agreement) to Defendants and/or their families, and who, by reason of background, training, education, or experience, is qualified to inspect Defendants' facility to determine whether the facility,

methods, processes, and controls are operated and administered in conformity with Dietary Supplement cGMP, 21 C.F.R. Part 111. Defendants shall notify FDA in writing of the identity and qualifications of the Expert within five (5) business days after entry of this Decree;

C. The Expert performs a comprehensive inspection of the facility and the methods, processes, and controls that Defendants use to manufacture, prepare, process, pack, label, hold, and distribute dietary supplements to determine whether Defendants are in compliance with 21 U.S.C. § 342(g)(1), 21 C.F.R. Part 111, and this Decree;

D. The Expert certifies in writing to FDA that: he/she has inspected the facility and the methods, processes, and controls that Defendants use to manufacture, prepare, process, pack, label, hold, and distribute dietary supplements; all Dietary Supplement cGMP deviations brought to Defendants' attention by FDA, the Expert, or any other source have been corrected; and the facility, methods, processes, and controls that Defendants use to manufacture, prepare, process, pack, label, hold, and distribute dietary supplements are in compliance with this 21 U.S.C. § 342(g)(1), 21 C.F.R. Part 111, and this Decree. The Expert's report of the inspection, which shall be submitted to FDA, shall include, but not be limited to, a determination that Defendants have methods, processes, and controls to ensure that they:

(1) Establish specifications for any point, step, or stage in the manufacturing process where control is necessary to ensure the quality of dietary supplements, as required by 21 C.F.R. § 111.70(a);

(2) Establish component specifications for each component used in the manufacture of a dietary supplement, as required by 21 C.F.R. § 111.70(b);

(3) Establish product specifications for the identity, purity, strength, and composition of each finished batch of dietary supplement, as required by 21 C.F.R. § 111.70(e);

3

(4) Determine whether each finished batch of dietary supplement meets product specifications that must be established in accordance with 21 C.F.R. § 111.70(e), as required by 21 C.F.R. § 111.75(c);

(5) Determine whether applicable component specifications established in accordance with 21 C.F.R. § 111.70(b) are met by conducting appropriate tests or examinations or relying on component suppliers' certificates of analysis as specified by 21 C.F.R. § 111.75(a)(2)(ii), as required by 21 C.F.R. § 111.75(a)(2);

(6) Conduct at least one appropriate test or examination to verify the identity of any component that is a dietary ingredient before using such component, as required by 21 C.F.R. § 111.75(a)(1);

(7) Prepare, follow, and maintain a complete master manufacturing record for each unique formulation of dietary supplement, and for each batch size, to ensure uniformity in the finished batch from batch to batch, as required by 21 C.F.R. §§ 111.205 and 111.210;

(8) Prepare, follow, and maintain a batch production record for each batch of dietary supplement that contains complete information relating to the production and control of each batch, as required by 21 C.F.R. §§ 111.255 and 111.260; and

(9) Establish and follow procedures requiring the use of equipment and utensils of appropriate design, construction, and workmanship to enable them to be adequately cleaned and properly maintained, as required by 21 C.F.R. § 111.27(a);

E. Defendants recall and destroy, under FDA's supervision, in accordance with the procedures provided in paragraph 6, all dietary supplements that were manufactured, prepared, processed, packed, labeled, held and/or distributed between April 2, 2014 and the date of entry of this Decree;

F. Defendants report to FDA, in writing, the actions they have taken to: (1) correct all of the Dietary Supplement cGMP deviations brought to Defendants' attention by FDA, the Expert, and any other source; and (2) ensure that the methods and processes used in, and the facilities and controls used for, manufacturing, preparing, packing, labeling, holding, and distributing dietary supplements are operated, and will be continuously administered in conformity with, Dietary Supplement cGMP;

G. As and when FDA deems necessary, FDA representatives inspect Defendants' facility to determine whether the requirements of this Decree have been met and whether Defendants are operating in conformity with this Decree, the Act, and its implementing regulations. If FDA decides to inspect Defendants' facility pursuant to this paragraph, FDA will initiate the inspection within forty-five (45) calendar days after FDA's receipt of the Expert's report under paragraph 5(D), Defendants' destruction of dietary supplements under paragraph 5(E), or FDA's receipt of Defendants' report under paragraph 5(F), whichever is later, or as soon as practicable in the event that FDA representatives are attending to public health matters or exigencies;

H. Defendants have paid all costs of FDA's inspections, investigations, supervision, analyses, examinations, and reviews with respect to paragraph 5, at the rates set forth in paragraph 14; and

I. FDA notifies Defendants, in writing, that they appear to be in compliance with all of the requirements set forth in paragraphs 5(A)-(F) and (H) of this Decree, the Act, and its implementing regulations. In no circumstance shall FDA's silence be construed as a substitute for written notification.

6. Within twenty-five (25) calendar days after entry of this Decree, Defendants, under FDA's supervision, shall destroy all dietary supplements that are in Defendants' possession, custody, or control. Defendants shall bear the costs of destruction and FDA's supervision. Defendants shall not dispose of any dietary supplements in a manner contrary to any federal, state, or local laws.

7. After Defendants have complied with paragraphs 5(A)-(F) and (H), and received FDA's written notification pursuant to paragraph 5(I), Defendants shall retain an independent person or persons (hereinafter, the "Auditor") who shall meet the criteria described in paragraph 5(B) to conduct audit inspections of Defendants' facility at least once every six (6) months for a period of one (1) year, after which the Auditor shall conduct audit inspections annually for an additional period of four (4) years, for a total of five (5) years of auditing. The first audit shall occur not more than six (6) months after Defendants have received FDA's written notification pursuant to paragraph 5(I). If Defendants choose, the Auditor may be the same person or persons retained as the Expert described in paragraph 5(B).

   A. At the conclusion of each audit inspection, the Auditor shall prepare a detailed written audit report ("Audit Report") analyzing whether Defendants are in compliance with Dietary Supplement cGMP and identifying any deviations ("Audit Report Observations"). As a part of every Audit Report, the Auditor shall assess the adequacy of corrective actions taken by Defendants to correct all previous Audit Report observations. The Audit Reports shall be delivered contemporaneously to Defendants and FDA by courier service or overnight delivery service, no later than ten (10) calendar days after the audit inspection is completed. In addition, Defendants shall maintain the Audit Reports in separate files at Defendants' facility and shall promptly make the Audit Reports available to FDA upon request.

B. If an Audit Report contains any observations indicating that Defendants' are not in compliance with the Dietary Supplement cGMP, Defendants shall, within twenty (20) calendar days after receipt of the Audit Report, correct those observations, unless FDA notifies Defendants that a shorter time period is necessary. If, after receiving the Audit Report, Defendants believe that correction of the deviations will take longer than twenty (20) calendar days, Defendants shall, within ten (10) calendar days after receipt of the Audit Report, submit to FDA in writing a proposed schedule for completing corrections ("Audit Correction Schedule"). The Audit Correction Schedule must be reviewed and approved by FDA in writing prior to implementation by Defendants. In no circumstance shall FDA's silence be construed as a substitute for written approval. Defendants shall complete all corrections according to the approved Audit Correction Schedule. Within thirty (30) calendar days after Defendants receive an Audit Report, unless FDA notifies Defendants that a shorter time period is necessary, or within the time period provided in a correction schedule approved by FDA, the Auditor shall review the actions taken by Defendants to correct the Audit Report Observations. Within five (5) business days after beginning that review, the Auditor shall report in writing to FDA whether each of the Audit Report Observations has been corrected and, if not, which Audit Report Observations remain uncorrected.

8. Upon entry of this Decree, Defendants and each and all of their directors, officers, agents, representatives, employees, attorneys, successors, assigns, and any all persons or entities in active concert or participation with any of them, who have received actual notice of this Decree by personal service or otherwise, are permanently restrained and enjoined under 21 U.S.C. § 332(a) from directly or indirectly doing or causing any act that:

A. Violates the Act, 21 U.S.C. § 331(a), by introducing or delivering for introduction into interstate commerce, or causing the introduction or delivery for introduction into interstate commerce, of articles of food (dietary supplements) that are adulterated within the meaning of 21 U.S.C. § 342(g)(1);

B. Violates the Act, 21 U.S.C. § 331(k), by causing articles of food (dietary supplements) that Defendants hold for sale after shipment of one or more of their components in interstate commerce to become adulterated within the meaning of 21 U.S.C. § 342(g)(1); and

C. Results in the failure to implement and continuously maintain the requirements of this Decree.

9. If, at any time after entry of this Decree, FDA determines, based on the results of an inspection, the analysis of a sample, a report, or data prepared or submitted by Defendants, the Expert, the Auditor, or any other information, that Defendants have failed to comply with any provision of this Decree, have violated the Act, or its implementing regulations, or that additional corrective actions are necessary to achieve compliance with this Decree, the Act, or its implementing regulations, FDA may, as and when it deems necessary, notify Defendants in writing of the specific noncompliance and order Defendants to take appropriate corrective action, including, but not limited to, ordering Defendants to immediately take one or more of the following actions:

A. Cease manufacturing, preparing, processing, packing, labeling, holding, and/or distributing any or all dietary supplements;

B. Recall, at Defendants' expense, any dietary supplement that in FDA's judgment is adulterated or otherwise in violation of this Decree, the Act, or its implementing regulations;

8

    C. Revise, modify, expand, or continue to submit any reports or plans prepared pursuant to this Decree;

    D. Submit additional reports or information to FDA as requested;

    E. Institute or reimplement any of the requirements set forth in this Decree;

    F. Issue a safety alert; and/or

    G. Take any other corrective actions as FDA, in its discretion, deems necessary to protect the public health or bring Defendants into compliance with this Decree, the Act, or its implementing regulations.

This remedy shall be separate and apart from, and in addition to, any other remedy available to the United States.

10. The following process and procedures shall apply if FDA issues an order pursuant to paragraph 9:

    A. Unless a different time frame is specified by FDA in its order, within ten (10) calendar days after receiving such an order, Defendants shall notify FDA in writing either that:

        (i) Defendants are undertaking or have undertaken corrective action, in which event Defendant shall describe the specific action taken or proposed to be taken and the proposed schedule for completing the action; or

        (ii) Defendants do not agree with FDA's order. If Defendants notify FDA that they do not agree with FDA's order, Defendants shall explain in writing the basis for their disagreement; in so doing, Defendants also may propose specific alternative actions and specific time frames for achieving FDA's objectives.

B. If Defendants notify FDA that they do not agree with FDA's order, FDA will review Defendants' notification and thereafter, in writing, affirm, modify, or withdraw its order, as FDA deems appropriate. If FDA affirms or modifies its order, it will explain the basis for its decision in writing. The written notice of affirmation or modification shall constitute final agency action.

C. If FDA affirms or modifies its order, Defendants shall, upon receipt of FDA's order, immediately implement the order (as modified, if applicable) and may bring the matter before this Court on an expedited basis. Defendants shall continue to implement and comply with FDA's order, unless and until the Court stays, reverses, or modifies FDA's order. Any judicial review of FDA's order under this paragraph shall be made in accordance with the terms set forth in paragraph 22 of this Decree.

D. The process and procedures set forth above in paragraphs 10(A)-(C) shall not apply to any order issued pursuant to paragraph 9 if such an order states that, in FDA's judgment, the matter raises a significant public health concern. In such case, Defendants shall, upon receipt of such order, immediately and fully comply with the terms of that order. Should Defendants seek to challenge any such order, they may petition the Court for relief while they implement FDA's order. Any judicial review of FDA's order under this paragraph shall be made in accordance with the terms set forth in paragraph 22 of this Decree.

11. Any cessation of operations or other action described in paragraph 9 shall continue until Defendants receive written notification from FDA that Defendants appear to be in compliance with this Decree, the Act, and its implementing regulations, and that Defendants may resume operations. Defendants shall pay all costs of all recalls and other corrective actions, including the costs of FDA's inspections,

investigations, supervision, analyses, examinations, sampling, testing, reviews, document preparation, travel, and subsistence expenses to implement and monitor the remedies set forth in paragraph 9, at the rates specified in paragraph 14.

12. Representatives of FDA shall be permitted, without prior notice and as and when FDA deems necessary, to inspect Defendants' operations and take any other measures necessary to monitor and ensure continuing compliance with the terms of this Decree, the Act, and its implementing regulations. During such inspections, FDA representatives shall be permitted to: have immediate access to Defendants' places of business including, but not limited to all buildings, equipment, components, finished and unfinished products, containers, packaging material, labeling, and other material therein; take photographs and make video recordings; take samples of Defendants' components, finished and unfinished products, containers, packaging material, labeling, and other material; and examine and copy all records relating to the receiving, manufacture, preparing, packing, labeling, holding, and distribution of any and all of Defendants' products, including components. The inspections shall be permitted upon presentation of a copy of this Decree and appropriate credentials. The inspection authority granted by this Decree is separate from, and in addition to, the authority to make inspections under the Act, 21 U.S.C. § 374.

13. Defendants shall promptly provide any information or records to FDA upon request regarding the receiving, manufacturing, preparing, processing, packing, labeling, holding, and distribution of Defendants' products.

14. Defendants shall pay all costs of FDA's inspections, investigations, supervision, analyses, examinations, and reviews that FDA deems necessary to evaluate Defendants' compliance with any part of this Decree at the standard rates prevailing at the time the costs are

incurred. As of the date that this Decree is signed by the parties, these rates are: $89.35 per hour or fraction thereof per representative for inspection and investigative work; $107.09 per hour or fraction thereof per representative for analytical or review work; $0.575 per mile for travel expenses by automobile; government rate or the equivalent for travel by air or other means; and the published government per diem rate for subsistence expenses where necessary. FDA shall submit a reasonably detailed bill of costs to Defendants. In the event that the standard rates applicable to FDA supervision of court-ordered compliance are modified, these rates shall be increased or decreased without further order of the Court. Defendants shall make payment in full to FDA within twenty (20) calendars days after receiving written notification from FDA of the costs.

15. Within five (5) calendar days after entry of this Decree, Defendants shall post a copy of this Decree, in English and Spanish, in a conspicuous location in a common area at Defendants' facility and shall ensure that the Decree remains posted for as long as the Decree remains in effect. Within ten (10) calendar days after entry of this Decree, Defendants shall provide to FDA an affidavit, from a person with personal knowledge of the facts stated therein, stating the fact and manner of compliance with this paragraph.

16. Within ten (10) calendar days after entry of this Decree, Defendants shall hold a general meeting or series of smaller meetings for all employees, at which they shall describe the terms and obligations of this Decree. Within twenty (20) calendar days after entry of this Decree, Defendants shall provide to FDA an affidavit, from a person with personal knowledge of the facts stated therein, stating the fact and manner of compliance with this paragraph and a copy of the agenda, and list of attendees.

17. Within ten (10) calendar days after entry of this Decree, Defendants shall provide a copy of the Decree by personal service or certified mail (return receipt requested) to each and all of their directors, officers, agents, representatives, employees, attorneys, successors and assigns, parties for whom Defendants contractually manufacture dietary supplements, and any and all persons or entities in active concert or participation with any of them (collectively referred to as "Associated Persons"). Within twenty (20) calendar days after entry of this Decree, Defendants shall provide to FDA an affidavit, from a person with personal knowledge of the facts stated therein, stating the fact and manner of compliance with this paragraph, identifying the names, addresses, and positions of all persons who have received a copy of this Decree, and attaching a copy of the executed certified mail return receipts.

18. In the event that any Defendant becomes associated with any additional Associated Person(s) at any time after entry of this Decree and for as long as this Decree is in effect, Defendants shall immediately provide a copy of this Decree, by personal service or certified mail (return receipt requested) to such Associated Person(s). Within ten (10) calendar days of each time that any Defendant becomes associated with any additional Associated Person, Defendants shall provide to FDA an affidavit, from a person with personal knowledge of the facts stated therein, stating the fact and manner of compliance with this paragraph, identifying the names, addresses, and positions of all Associated Persons who received a copy of this Decree pursuant to this paragraph, and attaching a copy of the executed certified mail return receipts.

19. Defendants shall notify FDA in writing at least fifteen (15) calendar days before any change in ownership, name, or character of their business that occurs after entry of this Decree and for as long as this Decree is in effect, including an incorporation, reorganization, creation of a subsidiary, relocation, dissolution, bankruptcy, assignment, sale, or any other change in the

structure or identity of Sunset Natural, Inc., or the sale or assignment of any business assets, such as buildings, equipment, or inventory that may affect obligations arising out of this Decree. Defendants shall provide a copy of this Decree to any prospective successor or assign at least twenty (20) calendar days prior to any sale or assignment. Defendants shall furnish FDA with an affidavit of compliance with this paragraph no later than ten (10) calendar days prior to such assignment or change in ownership.

20. If any Defendant fails to comply with any provision of this Decree, the Act, or its implementing regulations, including any time frame imposed by this Decree, then Defendants shall pay to the United States of America: five thousand dollars ($5,000) in liquidated damages for each day such violation continues; an additional five thousand dollars ($5,000) in liquidated damages for each violation of this Decree, the Act, and/or its implementing regulations; and an additional sum in liquidated damages equal to twice the retail value of any distributed dietary supplements that are adulterated or otherwise in violation of this Decree, the Act, and/or its implementing regulations. Defendants understand and agree that the liquidated damages specified in this paragraph are not punitive in nature and their imposition does not in any way limit the ability of the United States to seek, or the Court to impose, additional civil or criminal penalties to be paid by Defendants, or remedies based on conduct that may also be the basis for payment of liquidated damages pursuant to this paragraph.

21. Should the United States bring and prevail in a contempt action to enforce the terms of this Decree, Defendants shall, in addition to other remedies, reimburse the United States for its attorneys' fees (including overhead), travel expenses incurred by attorneys and witnesses, expert witness fees, investigational and analytical expenses, administrative and court costs, and any other costs or fees relating to such contempt proceedings.

22. Defendants shall abide by the decisions of FDA, and FDA's decisions shall be final. All decisions conferred upon FDA in this Decree shall be vested in FDA's discretion and, to the extent that these decisions are subject to review, shall be reviewed by the Court under the arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A). Review by the Court of any FDA decision rendered pursuant to this Decree shall be based exclusively on the written record before FDA at the time the decision was made. No discovery shall be taken by either party.

23. All notifications, correspondence, and communications to FDA required by the terms of this Decree shall be prominently marked "Decree Correspondence" and addressed to the District Director, Florida District Office, United States Food and Drug Administration, 555 Winderley Place, Suite 200, Maitland, Florida, 32751, and shall reference this civil action by case name and civil action number.

24. The parties may, at any time, petition each other in writing to extend any deadline provided herein, and the parties may grant such an extension without seeking leave of court. Any such petitions shall not become effective unless and until granted in writing.

25. No sooner than five (5) years after entry of this Decree, Defendants may petition FDA for leave to ask this Court for relief from this Decree. If, at the time of the petition, in FDA's judgment, Defendants have maintained a state of continuous compliance with this Decree, the Act, and its implementing regulations for at least five (5) years, Plaintiff will not oppose the petition, and Defendants may request the Court to grant such relief.

26. This Court retains jurisdiction over this action and the parties thereto for the purpose of enforcing and modifying this Decree and for the purpose of granting such additional relief as may be necessary or appropriate.

SO ORDERED, this 25 day of Sept., 2015.

_____
UNITED STATES ~~DISTRICT~~ JUDGE
MAG.

Entry consented to:

For Defendants

_____
TERESA MARTINEZ
Individually and on behalf of Sunset Naturals, Inc., as its President

_____
ELSY CRUZ
Individually and on behalf of Sunset Naturals, Inc., as its Vice President

_____
RENIER CRUZ
Attorney for Defendants

For Plaintiff

WILFREDO A. FERRER
United States Attorney

_____
Melanie Singh
Counsel
Consumer Protection Branch
Department of Justice
Civil Division
P.O. Box 386
Washington, D.C. 20044
202-616-9928
202-514-8742

OF COUNSEL:

WILLIAM B. SCHULTZ
General Counsel

ELIZABETH H. DICKINSON
Chief Counsel
Food and Drug Division

PERHAM GORJI
Deputy Chief Counsel for Litigation

MICHELE SVONKIN
Senior Counsel
Office of the Chief Counsel
Food and Drug Administration
10903 New Hampshire Avenue
Bldg. 32, Room 4308
Silver Spring, MD 20993-0002
301-796-8719